John McDougall, Administrator, &c., of Joseph W. Lea, deceased, et al., Appellants, vs. Richard Van Brunt, Appellee.

Where a defendant, who is sued in equity by an administrator for the recovery of a slave alleged to belong to the estate of his intestate, sets up an absolute title to the same and relies upon a bill of sale from the intestate directly to himself to support his claim, if the other evidence in the cause shows that the slave was in possession of the intestate at the time of his death, and had so continued from the date of the bill of sale, and that a stranger took possession of her immediately after that event, and there is no evidence to negative the idea that the defendant obtained his possession from such stranger, the acts and declarations of the latter, so far as they are immediately connected with his possession, may be admitted as evidence with respect to the character of the defendant's title.

Appeal from a decree of the Circuit Court for Leon county, sitting in chancery.

Complainants filed their bill, alleging that some time in March, 1845, Joseph W. Lea, dec'd, borrowed of Richard Van Brunt, senior, the father of defendant, two hundred and fifty dollars, for which he gave his promissory note payable to Richard Van Brunt, Sr., one day after date, and at the same time gave a bill of sale for a certain slave named Maria as a security for said note, and for no other purpose; that Joseph W. Lea, the intestate, retained the possession of said slave until his death, which occurred in the latter part of the year 1846, or early in 1847; that Richard Van Brunt, Sr., about two or three days after the death of Joseph W. Lea, came to the place where said Lea resided and took possession of said slave and removed her from the premises of said Lea, alleging at the time that he

held a bill of sale for her, executed by said Lea to secure the money loaned as aforesaid.

The bill further alleges, that the note given by Lea was endorsed by Van Brunt, Sr., in blank to the defendant, who afterwards endorsed the same to Lloyd & Flagg, and that the note has since been paid off and satisfied in full by McDougall, administrator; that defendant obtained the possession of the slave from his father Richard Van Brunt, Sr., under color of the bill of sale aforesaid; that at the date of the bill of sale defendant was a minor, a member of his father's family; that Richard Van Brunt, Sr., since the slave was taken possession of as aforesaid, has died. The prayer is in substance that the bill of sale aforesaid be declared a mortgage; that the debt to secure which it was given be declared to have been paid, and that the defendant be decreed to surrender the slave to McDougall, as administrator of the estate of Lea.

The answer denies that defendant obtained his possession from Richard Van Brunt, senior, to his father, or that the bill of sale referred to was intended to operate as a mortgage, and expressly avers that defendant bought the slave from Lea for two hundred and fifty dollars, which he paid in cash and received at the time the possession of the slave, which he has ever since retained.

Thomas W. Terrill, a witness examined for complainants, testified that the slave in controversy was at the house of Joseph W. Lea at the time of his death, and had been for some time previously; that she was in Lea's possession for months before his death, and that he saw her at Lea's residence the day after his decease; that defendant, in 1846, was about twenty years of age, and that he was then living with his father; that he was present when a conversation passed between Alsa Strickland and Richard Van Brunt, Sr., at the house of Lea, the day after his death. Van Brunt, Sr., said he had loaned Lea two hun-

dred and fifty dollars, for which he had his note and a bill of sale to the negro girl in question to secure him in the payment of the note, and offered the note, bill of sale and negro to Strickland if he would return to him the money he had loaned to Lea.

Alsa Strickland, another witness examined for complainants, testified that the slave in question was in Lea's possession until his death; that Richard Van Brunt, Sr., took possession of said slave after Lea's death; that he, Van Brunt, told witness that he held a bill of sale for said slave, as security for money loaned Lea; that Van Brunt, Sr., offered to give him the slave and all the papers if he would pay the money loaned, viz: two hundred and fifty dollars. Van Brunt, Sr., at the same time offered to warrant the title. On the day Joseph Lea died, witness requested Van Brunt, Sr., to administer on Lea's estate; that he declined, stating that he held a note and bill of sale to the girl to secure him in the payment of the money borrowed by Lea.

Gillen B. Strickland, another witness examined for complainants, testified that the slave in controversy remained in Lea's possession until his death; that shortly after Lea's death, witness being present, Van Brunt, Sr., took possession of the slave, declaring he had a bill of sale for her as security for money loaned to Lea. Van Brunt, Sr., afterwards offered the slave to the sister of witness on payment of the money loaned.

For the defendant, Charles W. Martin was examined, who testified that he knew the slave Maria enquired of; that he knew her in the spring of 1846; she was then a small child, three or four years of age. Her value then was about two hundred dollars. She was in Mr. Lea's possession when he first knew her. She remained in his possession until his death.

James C. Van Brunt, a brother of defendant, was examined in his behalf. He states, that he knew defendant purchased the slave from Joseph W. Lea some time in the spring of 1846 ; that his mother, himself and some of the children were present at the time of the purchase. He saw money paid—thinks two hundred and fifty dollars. The slave was small. She was at Lea's house until his death. At the time of the purchase does not think that any writing passed—saw none. The witness states that his father and family, consisting of eight children, lived with his brother, who was then 20 or 21 years of age and unmarried, and that his brother had been attending to the business of the farm, part of the time overseeing.

The defendant offered and read in support of his title an absolute bill of sale from Lea to himself, purporting to have been executed shortly before Lea's death. This bill of sale is admitted to be in the hand writing of Van Brunt, Sr., who is the only subscribing witness thereto.

The Court below ruled out so much of the depositions of the witnesses as referred to the acts and declarations of Van Brunt, Sr., on the occasion of his taking possession of the slave after the death of Lea, as inadmissible to defeat the title set up by the defendant, and dismissed the bill.

*Archer & Papy* for Appellants.

*D. P. Hogue and B. F. Allen*, for Appellee.

DUPONT, J., delivered the opinion of the Court.

This is a suit in equity, instituted by the appellant, as the administrator on the estate of Joseph W. Lea, deceased, and others, for the recovery of a negro slave alleged to be the property of the said estate.

The bill alleges that the intestate, Lea, about the month of March, A. D., 1845, borrowed of Richard Van Brunt,

Sr., the sum of two hundred and fifty dollars, for which he gave his promissory note, and at the same time executed and delivered to him a bill of sale for the negro in controversy, which was intended and designed to operate only as a mortgage to secure the payment of the said note.— That in the latter part of the year 1846, or early in the year 1847, the said intestate departed this life, being then in possession of the slave, and never having parted with the same. That two or three days after the decease of the intestate, Van Brunt, Sr., came to the late residence of the intestate, and took the slave into his possession, alleging at the time that he held a bill of sale for her, to secure the before mentioned loan of money. That the note given for the loan of money was made payable to Van Brunt, Sr., who indorsed the same in blank to the defendant, who afterwards indorsed and transferred the same to Messrs. Lloyd & Flagg, and that the note has since been paid off and fully satisfied. That Van Brunt, Jr., the defendant, obtained the possession of the slave from his father, Van Brunt, Sr., under color of the bill of sale before referred to. That the defendant was at the date of the bill of sale, a minor and a member of his father's family, and that Van Brunt, Sr., has since died. The substance of the prayer is, that the mortgage debt be declared to have been paid, and that the defendant be decreed to surrender the slave to the plaintiff as administrator of the estate.

The defendant in his answer denies that he obtained his possession from his father, or that the bill of sale under which he claims title to the slave was intended to operate as a mortgage, and expressly avers that he, defendant, bought the slave from Lea for the sum of two hundred and fifty dollars, which he paid to him in cash, and received from him at the time of the purchase the possession of the slave, which he has retained to the present time.

McDougall, Adm'r, v. Van Brunt—Opinion of Court.

At the hearing before the Chancellor, the depositions of several witnesses were proposed to be read going to show that the slave was in the possession of Lea at the date of his decease, and that she was taken possession of by Van Brunt, Sr., who declared at the time, that he held a bill of sale for her from the intestate, to secure the payment of a note of two hundred and fifty dollars, which he had given to him for that amount of money loaned to him prior to his decease.— These several depositions were read as proofs in the cause, with the exception of so much thereof as referred to the acts and declarations of Van Brunt, Sr., upon the occasion of his taking possession of the slave, after the decease of the intestate; which acts and declarations were excluded as being inadmissible to defeat the alleged absolute title of the defendant. The defendant exhibited in support of his title an absolute bill of sale from the intestate Lea directly to himself, purporting to have been executed a short time prior to his decease.

The petition of appeal alleges two grounds for the reversal of the decree of the Chancellor. 1st. That the court erred in excluding the acts and declarations of the elder Van Brunt from the evidence in the cause. 2d. That upon the pleadings and testimony, (with or without the declarations of Van Brunt,) the cause should have been decided for the complainants.

The first assignment as set forth in the petition is based upon the assumption that the acts and declarations of the elder Van Brunt, as testified to by the witnesses, were a part of the *res gestœ*, and as such were admissible to establish the point at issue, to wit : the character of the defendant's title under the bill of sale—whether absolute or only a security in the nature of a mortgage.

It was insisted on the part of the appellee, that his title to the slave in controversy could not be affected by the acts

and declarations of his father, who was an entire stranger to, and wholly unconnected with, the alleged purchase from Lea. It is undoubtedly correct as a rule of evidence that no one can be held to be responsible for, or bound by the acts or declarations of a mere stranger; and if that were the position of the elder Van Brunt in reference to the alleged title to the slave, we should have no difficulty in sustaining the action of the Chancellor in ruling out from the evidence his acts and declarations. But we are clearly of opinion that these acts and declarations are intimately connected with the title of the defendant, which he seeks to set up under color of the bill of sale from Lea; and, being so connected, there is a manifest propriety in allowing them to have their proper weight in determining the rights of the parties. The correctness of this conclusion will be readily perceived if we advert to the other evidence in the cause. It is distinctly proved by the testimony of several of the witnesses, whose depositions are before us, that the slave in controversy was in possession of Lea at the time of his decease, and remained at his late residence with his other slaves, until she was taken possession of and removed by the elder Van Brunt, a few days after the decease of the intestate, under a claim of title. Thomas W. Terrell, one of the witnesses examined, testifies that the slave was at the house of intestate at the time of his death, and had been there for some time previous to that event. In another part of his deposition he says, " the above described negro girl was in the possession of Joseph W. Lea for months before his death." He also testifies that he saw her at the residence of the intestate the day after his decease.

The depositions of Alsey Strickland and Gillen B. Strickland, are likewise to the same effect, all going to show that the slave was in the possesssion of the intestate at the date

of his decease, and that she remained at his residence until she was afterwards taken possession of by the elder Van Brunt under a claim for security for money loaned, and removed by him to his residence. These witnesses are also sustained in their evidence by the deposition of Charles W. Martin, a witness examined on behalf of the *defendant,* who says— "I know the girl Maria enquired of—I knew her in the Spring of 1846. She was then a small child about 3 or 4 years of age. Her value then was about $200. She was in Mr. Lea's possession when I first knew her— *She remained in Mr. Lea's possession until his death.*"

Now, the evidence contained in the depositions just referred to, shows conclusively, and freed from a shadow of doubt, that down to the period of Lea's death, he had always had the possession of the slave—that the possession had been *continuous and uninterrupted,* (with the exception of the time that she was in the possession of Vickers under a pledge,) and that it was never changed until she was taken possession of by the elder Van Brunt. Here then the first change of possession that we have any knowledge of, is the change effected by the elder Van Brunt under a claim of title. The next change that we hear of, is the assertion of the claim of the defendant under color of a bill of sale from the intestate. It is very manifest from the evidence before referred to, that (notwithstanding the allegation in the answer,) he, the defendant, never obtained the possession of the property from the intestate Lea. And the clear presumption is, in the absence of proof to the contrary, that his present possession was obtained from his father, the elder Van Brunt, and from no one else. If we be correct in this conclusion, and it would seem not to admit of a doubt, then it results conclusively that the possession of the defendant is intimately connected with the possession of his father, and that the father and son stand in

full *privity* respecting the title to the slave in controversy. If this be so, it cannot assuredly be said that the acts and declarations of the elder Van Brunt, touching the manner of acquiring his possession of the slave, and his object and motive for the acquisition, are those of a mere stanger, and are to be excluded from the evidence as being *res inter alios acta.*

It is, moreover, worthy of consideration, in determining upon the admissibility of this evidence, that the defendant is proven to have been a minor at the date of the bill of sale under which he sets up his title to the slave, and was residing with his father, as a member of his family; that the bill of sale is admitted to be in the handwriting of the father, and that he is the only attesting witness to the execution of the same. The note also which it is alleged was given for the loan of money is shown to have been endorsed to the son, and affords strong circumstantial evidence to connect him with that transaction. These circumstances, we think, go far to show that the aspect of the transaction, as it really took place, may be very different from that presented by a mere reference to the bill of sale, and ought, therefore, to exercise a proper influence in determining not only the admissibility of the evidence, but the true character of the entire transaction.

We have considered this question without reference to authorities, as it involves a simple elementary principle about which there is no dispute. The only difficulty encountered is in its application, and upon that point the books furnish but an uncertain guide. It may not, however, be out of place to note the rule of evidence upon the subject of fraud as observed in the courts of law and equity respectively. Mr. Story, in his Treatise on Equity Jurisprudence, remarks, that "Courts of equity do not restrict themselves by the same rigid rules as courts of law

do, in the investigation of fraud, and in the evidence and proofs required to establish it. It is equally a rule in courts of law and courts of equity, that fraud is not to be presumed, but it must be established by proofs. Circumstances of mere suspicion, leading to no certain results, will not, in either of these courts, be deemed a sufficient ground to establish fraud. On the other hand, neither of these courts insists upon positive and express proofs of fraud; but each deduces them from circumstances affording strong presumptions. But courts of equity will act upon circumstances, as presumptions of fraud, where courts of law would not deem them satisfactory proofs." (Story's Eq. Ju., § 190.)

From the view which we have taken of the first assignment contained in the petition of appeal, and from the conclusion to which we have been lead, we deem it unnecessary to investigate the other ground alleged for a reversal of the decree of the Chancellor, which would involve a full discussion of the merits of the cause. As the case must necessarily be sent back for further proceedings, even were we to decide upon the merits, it is better to reserve that investigation until there shall have been a full hearing upon the new trial to be granted.

Let the decree of the Chancellor be reversed, with costs, and the case be remanded to the court below, with directions to reinstate and rehear the same as upon a new trial, and otherwise to proceed in said cause in accordance with the views herein expressed.

BALTZELL, C. J., delivered the following opinion:

I concur in the view taken by the court in this case, but think that they should have gone further and disposed of it finally. There is no reason, so far as I can see, why the case should not be so disposed of. I see nothing to prevent a final decision on the merits in this court in the pre-

sent aspect of the record. There is no pretence of any new testimony—no application is made for a rehearing or new trial. Why, then, is the case remitted for new trial to the court below?